**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 07 2018

JAMES W. McCORMACK, CLERK
.By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

N'ELL JONES                                                    PLAINTIFF

vs.                    CASE NO. _4:18-cv-831-BSM_

ARKANSAS ADMINISTRATIVE OFFICE
OF THE COURTS, a public body corporate;
and JUDGE MARY MCGOWAN, individually
and in her capacity as the Administrative Agent
of the Arkansas Administrative Office of the Courts,
a public body corporate                                       DEFENDANTS

**COMPLAINT**   This case assigned to District Judge _Miller_
and to Magistrate Judge _Ray_

1. The court's jurisdiction is invoked pursuant to 28 U.S.C. §1343 and 42

U.S.C.§2000(e) and 42 U.S.C.§12101, et seq.

2. Venue is appropriate because the parties reside in Pulaski County,

Arkansas.

3. The plaintiff, N'ell Jones, is a citizen of the United States who at relevant

times herein was employed by the Arkansas Administrative Office of the Courts

(AOC). She is a disabled person as that term is defined by the Americans with

Disabilities Act (ADA), 42 U.S.C. § 12102, et seq. At all pertinent times herein, the

defendants perceived plaintiff to be a disabled person.

4. The defendant AOC is an "employer" as that term is defined by Title VII of

the 1964 Civil Rights Act. It is the agency created to administer the work of the

Courts of the state of Arkansas including the employment, assignment, terms and

condition of employment and discharge of its support staff of the various Circuit and

District court judges.  The Judges are subject to oversight by the AOC.

1

5.  Defendant Circuit Judge Mary McGowan is also an employee of the defendant AOC.  She is being sued in her administrative capacity as the agent of the defendant AOC; and individually, for adverse acts regarding the employment of plaintiff.

6.  This action is brought against the defendant AOC because it is the "employer" of the plaintiff.  Plaintiff filed a charge of employment discrimination due to disability with the United States Equal Employment Opportunity Commission (EEOC) on February 16, 2017.  Exhibit 1.   She received Notice of Right to Sue on August 10, 2018. Exhibit 2.

7.  At all times enumerated herein, defendant Judge McGowan perceived that plaintiff was disabled as defined by the ADA.

## I.
## STATEMENT OF FACTS

A. Defendants were aware that plaintiff had a disability.

8.  On or about December 3, 2016, defendant Judge McGowan hired plaintiff as "trial court administrator/veterans' treatment administrator" for the 9th Circuit Judicial Court of Pulaski County, Arkansas.

9. During their initial meeting in December 2016, plaintiff informed defendant Judge McGowan that her disability involved problems with reading due to the inability to identify speech sounds and/or learn how they relate to letters and sounds.  Plaintiff's disability is acknowledged as such by the Equal Employment Opportunity Commission (EEOC).

10.  Shortly after Jones' employment, Judge McGowan began a course of negative conduct toward plaintiff perceived to be related to her handicapping condition. That course of conduct is borne out by her treatment as described below:

a. On December 14, 2016, Judge McGowan <u>yelled</u> instructions to plaintiff and then directed plaintiff to "write down everything I say."

b.  Between December 19 and 22, 2016, Judge McGowan again <u>yelled</u> and <u>screamed</u> at Jones about the arrangement of the files on the table. Judge McGowan <u>shoved</u> files off the conference table onto the floor. She then demanded Jones to "<u>pick them up.</u>"

c. On or about December 22, 2016, while they were engaged in conversation, Judge McGowan put her finger in Jones' face, called her "schizophrenic" and a "liar." In a fit of anger, Judge McGowan assaulted Jones by striking her with a file.

d.  On January 17, 2017, Judge McGowan informed Jones, in front of her entire staff, that she (Jones) was "pitiful."

e. On January 18, 2017, as Jones was attempting to answer a long ringing telephone in Judge McGowan's office, Judge McGowan again assaulted Jones by hitting her on the hand.

f.  On January 19, 2017, Jones expressed her displeasure with Judge McGowan's treatment of her in a letter. (Exhibit 3 – Letter from Jones to Judge McGowan). Before Judge McGowan read the letter, she again <u>yelled</u> at Jones, ignored her questions, and told her that she needed to act like an adult. After reading the letter, while in court, Judge McGowan angrily told Jones to place all files on the bench instead of handing them to her. After court, Judge McGowan didn't speak to Jones.

g. On January 20, 2017, Judge McGowan saw Jones in the office but did not speak to her. Rather than give instructions or directions regarding that day to Jones, Judge McGowan directed another employee to provide her instructions and directives to Jones.

h.  On January 23, 2017, Judge McGowan again refused to speak to Jones except through another employee. Then in Jones' presence, Judge McGowan asked the other employee why Jones had written "hearing" when "sentencing" was checked.  Judge McGowan referred to Jones as "SHE"; and in Jones presence asked the other employee: "Why did she do this?" "She messed it up, she is creating problems."

3

i. On January 24, 2017, Judge McGowan 'shooed' Jones away when Jones attempted to discuss a missing file. Then, while in court, Judge McGowan snatched a form from Jones, told her not to touch the form, and then threw the forms on the bench instead of handing them to Jones. Rather than to allow Jones to explain Jones' work with her.  Judge McGowan directed Jones to put her explanation in writing.

j. On January 25, 2017, while in court, Jones attempted to discuss a "form" with Judge McGowan. Judge McGowan shoved the form at Jones and <u>yelled</u> hostile remarks toward her while in court.  After court, Judge McGowan instructed Jones to copy documents which Jones did. Judge McGowan then asked another employee to copy the same documents for her.

k. On January 26, 2017, Judge McGowan addressed staff by their surnames. She addressed Jones, however, "You."

l. On January 30, 2017, in the courtroom, Judge McGowan again ignored Jones' except through directives for Jones through others. When court was over Judge McGowan made fun of Jones.

## B. Plaintiff complained to her employer, AOC, regarding her Mistreatment

11.  On January 30, 2017, Jones complained to defendant AOC about her on

the job treatment from Judge McGowan. Rather than address Jones' complaint, the

AOC directed her to the Employee Assistance Program (EAP) so that it could

address the matter. After Jones went to EAP, the pattern of humiliating

mistreatment by Judge McGowan toward Jones became exacerbated as follows:

a.  On January 31, 2017, McGowan again refused to speak, or allow other staff members, to speak with Jones about Jones' work concerns.

b.  On or about February 1, 2017, Judge McGowan told the other members of her staff that Jones had a handicapping condition which Judge McGowan specified and because of it Jones "couldn't read."

c.  On February 3, 2017, Judge McGowan approached Jones about her request to go to her doctor's appointment in the presence of another employee. Judge McGowan then said, "You don't seem to get how things are done around here."  Judge McGowan then told Jones that she didn't "understand the policy" and

"<u>get a note pad and write the policy</u>." Judge McGowan did not treat other staff in a similar manner.

d.  On February 6, 2017, Judge McGowan interacted with everyone in the office except Jones.

e.  On February 7, 2017, when Jones sought to discuss a work-related matter, Judge McGowan directed Jones to "put [your] concerns in writing."

f.  On February 9, 2017, in front of another employee, Judge McGowan told Jones "to focus and stay on task," "not to use the phone in order to do her work, and to neither talk back or disobey the orders of McGowan.

g.  On February 13, 2017, Judge McGowan <u>threw</u> a file towards Jones' stating "There is a note on there." Shortly thereafter, Judge McGowan threw <u>another file</u> toward her. Judge McGowan did not treat other AOC employees similarly.

h.  On February 15, 2017, while in the courtroom, Judge McGowan yelled at Jones, told her she was "pitiful" and referred to her again as "you." When court was over, Judge McGowan told Jones that "[you] don't follow directions" ... [you] should have learned in kindergarten."

i.  On February 16, 2017, Judge McGowan told Jones in front of another employee to get out her "little notebook" and write down instructions; "Do as you are told, that's right, that's your <u>ADHD</u>, that's why you can't stay on task."

j.  On February 17, 2017, during court, Judge McGowan again threw 'notices' toward Jones, yelled at her to pay attention, asked her if she could read, and announced that she was making changes to the docket due to Jones' errors. In front of other employees, Judge McGowan told Jones that she was "dishonest" and "contradicting." Judge McGowan mimicked and mocked jones for having run out of the office "wailing loudly."

### C. Plaintiff complained again to her employer

12.  On February 21, 2017, Judge McGowan again yelled at Jones that she was "remedial," and "pull out your little note book, and write down everything I say." Jones did so. Judge McGowan then had Jones read what Jones had written. When Jones stumbled over one word, Judge McGowan told her, "you can't read;

nope you can't read; you couldn't even read that." Judge McGowan then described

Jones as the "worst employee" Judge McGowan ever had and directed her to get

your purse and leave the office." Plaintiff considered those words to constitute her

discharge.  She reported them to the AOC Human Relations (HR) department.

13.  When HR directed plaintiff to return to work the same date, Judge

McGowan told plaintiff not to return until the next day; however, the harassing and

demeaning conduct continued.  When Jones returned to work on February 22, 2018,

Judge McGowan then continued her pattern of harassment but enhanced it by

additional of acts and events which constitute "retaliation."

### D.  After being discharged, plaintiff returned to work

14. Retaliation is generally punishment by an employer of an employee who

has complained because she asserted her right to be free from employment

discrimination. After plaintiff complained to AOC HR on February 21, 2018, she

returned to work on February 22, 2017.  Upon her return to work, in the presence of

two staff members, Judge McGowan told plaintiff that she was aware that Jones

had reported Judge McGowan's treatment of her to the AOC. She then told Jones

that she would receive a bad evaluation; and Jones would not be receiving merit

pay. Judge McGowan then told Jones that because Jones was insubordinate that

Jones could not receive TCA training.

15. The defendants are fully aware of their obligations to enforce the Civil

Rights Laws including the American with Disabilities Act. They are also aware of

their obligation not to punish an employee for having engaged in lawfully protected

activity. Their awareness is due to the training which the AOC requires for judges

annually and that which is provided by the HR department.

16. The defendant AOC is subject to the provisions of Title VII and the

American with Disabilities Act. Judge McGowan is not immune from the obligations

of ADA and Title VII because the acts of which she is accused by Jones herein were

undertaken in her administrative capacity.

17. After Judge McGowan terminated plaintiff on February 21, 2017, and

Judge McGowan decided to change her mind and inform Jones to come to work the

next day, Judge McGowan promptly resumed and otherwise enhanced her

harassment of Jones:

a. On March 6, 2017, during court, Judge McGowan threw documents
towards Jones. After court, Judge McGowan made negative remarks regarding
Jones' work performance in front of the staff.

b. On March 7, 2017, in the presence of other staff, Judge McGowan
instructed Jones to write: "Sit in chair, not Richmond's desk; sit in chair wait for
further instructions; do not go in judges' chambers; place files on end of table in
front office."

c. On March 8, 2017, Judge McGowan required Jones to write: "Don't put
anything on [another employee's] desk; if the judge gives me something that entails
a product, I will place the completed product on the table on the left side by table it
is meant to refer to the table in court's chamber, which is immediately beside the
bathroom door; follow orders written on pad; by product it is meant to be an order to
complete a task that is in writing; file pleadings found in green folder; pull docket
when I'm in receipt of docket listing, refile file, as ordered."

d. On March 9, 2017, Judge McGowan told the staff that Jones' method of
addressing certain records of was "schizophrenic."

e. On March 20, 2017, Judge McGowan directed Jones to make a mock phone
call and had her write down instructions for answering the phone. In addition,
Judge McGowan directed Jones write, "do not go in judge's office for files, do not
place files on stack, place in chair."

f.  On March 21, 2017, while in court, Judge McGowan threw official papers for which Jones was responsible on the bench instead of handing them to Jones. After court, Judge McGowan ordered Jones to "sit in a chair". Plaintiff did as ordered from 2:35 PM until she left work at 3:30 PM.

g.  Around March 27, 2017, before scheduling a doctor's appointment which she needed, Jones requested a private meeting with McGowan to discuss her need for sick leave. Judge McGowan angrily commented, "Yep, take eight hours sick! I'm sick of this! Take eight hours sick! Get out!" Judge McGowan proceeded to tell Jones that Jones was "fidgety like a defendant that was off her medicine." Judge McGowan again called Jones a "liar", pointed a pen towards her face, and told her that McGowan would have a witness present every time she needed to speak with Jones.

h.  On April 3, 2017, Judge McGowan again directed Jones: "You don't leave from down there, you sit there in that chair." "Lose the attitude; write this down because you won't get it." Then Judge McGowan told Jones to go home and take seven hours of leave time.

i.  On April 5, 2017, Judge McGowan spoke with Jones over the phone regarding Jones' request to leave work for a doctor's appointment. Judge McGowan asked her if she understood the appointment shouldn't have been made prior to her approval. She asked Jones the specific need for the appointment and the doctor's name. Judge McGowan told Jones that she would need to submit a doctor's note upon return and reminded Jones that she was running out of paid leave time. After Jones told McGowan that she had an appointment with a physician, McGowan responded, "Didn't you make a complaint about this?" Although Jones' appointment was for 11:15 a.m., it was then 9:30 a.m., Judge McGowan told Jones, "[Just] leave; leave now and bring back a doctor's note; you'll be using sick leave or LWOP; just leave now!"

j.  On May 1, 2017, Jones gave proof of her doctor's visit to Judge McGowan. Judge McGowan refused to accept Jones' doctor statement because it did not contain a diagnosis of Jones' condition. Jones complained that it was inappropriate for her to discuss her medical condition in a staff meeting or with Judge McGowan. Judge McGowan then took all the work duties of plaintiff's job description from her except the duty of filing. Jones contends that Judge McGowan's action was contrary to the Health Information Privacy and Portability Act (HIPPA) and of the ADA.

k.  On May 3, 2017, Judge McGowan refused to allow Jones to do any work except filing.

l.  On May 4, 2017, Jones again questioned Judge McGowan about the

limitations of her work. Judge McGowan then had Jones write down five separate times that Jones was "only to do what [McGowan] ordered her to do."

m. Later on May 4, 2017, Judge McGowan gave Jones a new assignment and a short time to complete it. Jones informed Judge McGowan that this was a major task because such filing had gone unattended for a long time. In attempting to explain her concerns to Judge McGowan, a paper held by Jones brushed Judge McGowan. Judge McGowan reacted by loudly yelling the words "keep your hands to yourself." Judge McGowan, on belief, was attempting to alarm the staff that she was being attacked by Jones. Jones then asked McGowan if she could be excused. McGowan said no. After about 45 minutes of crying, being ridiculed, and demeaned by Judge McGowan, Jones stood to get her purse to leave. Judge McGowan then told Jones that she wasn't getting her way and could not leave. Judge McGowan then informed Jones that she was walking off the job and immediately directed the bailiff to take Jones' keys.

## II.
## PLAINTIFF'S CLAIM OF UNLAWFUL TREATMENT UNDER TITLE VII AND ADA

18. Plaintiff was discharged by defendant AOC on February 17, 2017. She was persuaded by the Human Resource Department to return to work which she did. Plaintiff was constructively discharged on May 4, 2017 when Judge McGowan had the bailiff take plaintiff's keys. Plaintiff left work because to stay would have been more humiliating and harmful to her and her self- respect and dignity would have been further compromised. Plaintiff was unemployed for many months thereafter.

19. The plaintiff's handicapping condition was a "motivating factor" for the actions of the AOC and Judge McGowan for their treatment of her. Plaintiff realleges the provisions of the complaint, paragraphs 10 a-1; 11 a-j; and 17a-m to support her claim of constructive discharge.

20. A constructive discharge occurs when instead of firing an employee

outright the defendant makes the terms of her employment so intolerable that in order to maintain her dignity, self-respect, and in this case her mental state, she has no reasonable alternative other than to resign.

21. Because the actions of defendants Judge McGowan and the AOC constitute unequal treatment and constructive discharge of plaintiff due to disability and retaliation, plaintiff is entitled to declaratory, equitable and injunctive relief as well as damages.

22. Plaintiff realleges the provisions of the complaint which establish that Defendants subjected her to a hostile work environment due to her disability and in retaliation for her complaints to the HR department and Judge McGowan about their treatment.  See complaint paragraphs 10 a-1; 11 a-j; and 17a-m, supra.

23. A hostile work environment exists when an employer subjects an employee to offensive, hostile conduct which is severe or pervasive so that a reasonable person would consider it as abusive.  Plaintiff submits that her treatment was so severe and pervasive as to meet the reasonable person standard.

24. Defendants, through and in deference to Judge McGowan, so harassed plaintiff as to create an unlawful hostile work environment for which plaintiff is entitled to substantial monetary relief. After May 4, 2017, plaintiff suffered loss wage and benefits loss for a lengthy period.  Although she has mitigated loss of income attributed to defendants' adverse conduct, she is entitled to receive back pay, front pay, and equitable relief and damages as allowed by law.

25. The amount of such relief should be enhanced due to defendants AOC and

Judge McGowan being fully aware that their conduct was unlawful. They deliberately and intentionally attempted to and did cause plaintiff Jones excessive stress and anxiety.

26.  The first overt retaliatory act occurred in February 2017 when Judge McGowan acknowledged that plaintiff had filed a complaint authorized by the ADA. Her subsequent actions intentionally enhanced and magnified the harm mental stress and anguish which they were in the process of perpetuating upon plaintiff. Defendants AOC and Judge Mary McGowan unlawfully retaliated against plaintiff Jones for having complained regarding the terms and conditions of her employment. Retaliation is prohibited by Title VII and the ADA.  Plaintiff is entitled to damages because of such retaliation.

27.  The defendant AOC may not claim immunity in that it is an employer as that term is defined by Title VII of the Civil Rights Act of 1964.

28.  Defendant Judge Mary McGowan's conduct is not immune from the relief sought because her deliberate and intentional acts toward plaintiff as alleged were not in exercise of her judicial capacity.  Defendant Judge McGowan is thus liable personally for damages for intentionally inflicting mental distress upon plaintiff and for assault under Arkansas law.

29.  Defendant AOC is also liable for plaintiff's damages due to the behavior of defendant Judge McGowan arising in tort under a respondeat superior theory. When plaintiff complained about McGowan's behavior in February 2017, and later, defendant AOC took no action to address the situation.  It never did!

30. On information on July 13, 2018, the Judicial Discipline Committee of the Supreme Court of Arkansas validated the complaints of plaintiff, Exhibit 4. It publicly reprimanded Judge Mary McGowan for her behavior.

31. The defendants violated the Health Insurance Privacy Portability and Accountability Act (HIPPA) by breaching confidentiality of plaintiff's medical condition by requiring plaintiff to discuss her disability with other employees of the Pulaski County Circuit Court, Ninth Division. HIPPA violations may not privately be enforced. The defendant's action; however, unlawfully invaded plaintiff's privacy under Arkansas Law upon which she asserts a claim for damages.

32. The right of plaintiff to be free from discrimination and other injury due to her disability condition is well known and well established. Indeed, defendant Judge McGowan is required as a Circuit Judge to enforce the ADA and Title 7 in appropriate cases presented to her in her judicial capacity. The parties are also well aware of state law which prohibits employers from assaulting and battering employees and for intentionally causing them emotional distress. The defendants' behavior toward plaintiff was thoughtful, deliberate, systematic and continuous; it was perpetrated by defendant McGowan in a manner which inflicted great harm, economic and emotional distress, and economic loss upon plaintiff. There is no legitimate defense for their actions.

## III.
## RELIEF SOUGHT

33. Plaintiff has suffered loss of income, benefits, employment, reputation, and credibility due to defendants' aforedescribed behavior. Their behavior subjected plaintiff to having multiple parties become informed of plaintiff's health that may not otherwise be known to the general public. Defendant McGowan's past behavior is publicly well known. It should have been known by the AOC. Her other acts constitute a state law tort of intentionally inflicting mental distress upon plaintiff and, as such, plaintiff is entitled to compensatory and punitive damages.

34. Because the alleged acts of the defendants constitute unlawful, deliberate, malicious, willful, reckless, and careless behavior in violation of law, the plaintiff is entitled to punitive damages in addition to compensatory damages.

WHEREFORE, Plaintiff Jones respectfully prays that this court set this matter for early trial before a jury of her peers, and thereafter enter a judgement on behalf of plaintiff for appropriate equitable relief including back and front pay and restoration of benefits lost; injunctive relief; compensatory damages against each defendant separately in the amount of $1,000,000.00; and for punitive damages against each defendant separately in the amount of $3,250.000.00.

Plaintiff further prays for such other, additional or alternative relief as may be provided by law which the court sees fit to grant; and for her costs and reasonable counsel fees as provided by 42 U.S.C. § 1988.

Respectfully submitted,

John W. Walker
JOHN W. WALKER, P.A.
1723 Broadway Street
Little Rock, Arkansas 72206
501-374-3758
501-37404187 – facsimile
Email: johnwalkeratty@aol.com

November 7, 2018

**EXHIBIT**

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To | Agency(ies) Charge No(s) |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 493-2017-00687 |

and EEOC

_____ State or local Agency, if any _____

| Name (indicate Mr. Ms. Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. N'Ell L. Jones | | 1976 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1917 Main St. Apt. 3, Little Rock, AR 72206 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees Members | Phone No. (Include Area Code) |
|---|---|---|
| ADMINISTRATIVE OFFICES OF COURTS | 101 - 200 | (501) 410-1929 |

| Street Address | City, State and ZIP Code |
|---|---|
| 401 West Markham, Room 100, Little Rock, AR 72201 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| Earliest | Latest |
|---|---|
| 12-09-2016 | 02-16-2017 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired in the position of Trial Court Administrator by the above named employer on or about December 9, 2016. Since my employment began I have been and continue to be subjected to a difference in the terms and conditions of my employment by my immediate supervisor who is a Circuit Court Judge. I have been harassed and ridiculed openly before my peers about my disability. I have been regarded as having another form of disability by her. I have been made to publicly announce when and where I have doctors' appointments, and explain why I need to have them. Her attitude towards me has caused me to have emotional moments on the job and even leave work because of the humiliation. Although I am aware that others have been harassed also, no one else has ever had their disability exposed or revealed.

I believe I have been and continue to be subjected to a hostile work environment because of my disability and regarded as disabled in violation of the Americans with Disabilities Act (ADA), as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| Feb 16, 2017 _____ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

EXHIBIT
2

To:   N'Ell L. Jones
      1917 Main St.  Apt. 3
      Little Rock, AR 72206

From:   **Little Rock Area Office**
        **820 Louisiana**
        **Suite 200**
        **Little Rock, AR 72201**

| | |
|---|---|
| ☐ | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **493-2017-00687** | **Tyrone Y. Blanks,** **Investigator** | **(501) 324-5083** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*William A. Cash Jr.*

AUG 0 8 2018

Enclosures(s)

**William A. Cash, Jr.,**
**Area Office Director**

*(Date Mailed)*

cc:   **Sam Kauffman**
      **Human Resource Director**
      **Administrative Office of the Courts**
      **625 MARSHALL STREET, Ste. 1100**
      **Little Rock, AR 72201**

January 18, 2017

Judge Mary Spencer McGowan
Ninth Division Circuit Court
401 W. Markham Room 240
Little Rock, AR 72201



EXHIBIT
3

Dear Judge McGowan,

I needed to tale this time to bring some things to your attention. I was extremely excited about the opportunity to work as your criminal Trial Court Administrator, and was overjoyed when I received the offer from you to become a member of your staff, I can admit that I was slightly disappointed when not given the opportunity, several months back, but was elated that I was being considered now. Even when I was asked to be your Clerk while employed with the Clerk's Office, I took it without hesitation, for I understood and respected that you truly valued a great work ethic and took pride in that fact that we had that in common.

After meeting with you, I was very hopeful, and excited that not only had you considered me for the position, that all the members of your staff, also believed that I would the perfect fit, and a great asset to the team. I was excited about the new learning opportunity told you then that I would do my best not to disappoint you.

Friday, December 9. 2016, was my first day in the office, I understood coming in that this position was very challenging. I've always been a self-starter, having the ability to take very little instructions and get a job done. I take pride on being a team player and value a great job. When trained properly, I can complete tasks effectively. I began this job with very limited training, it was almost a "sink or "swim" situation, I felt that with the limited training that was given to me, I was "swimming", unfortunately, of what I've been feeling, that does not seem to be the case with you.

I understand that there is different type of leaders, and they may tend to supervise differently than others. Daily interaction and supervision tactics, very from employer to employer. But, there are things that I feel that no one must endure while being employed. I can take criticism very well, by insults, not well at all. I disclosed to you that I suffered from ███████ during our first meeting; I was very embarrassed when you mentioned it to other staff members, by saying "That's right, you can't read, you have ███████' I was very embarrassed the first time and the several times it's been mentioned in front of other staff members. To ask a person if they suffer from ███████ or some other mental issue or to suggest that I need to see a psychiatrist or even get an eye exam, all done in front of other staff members, is humiliating. The verbal abuse is creating an extreme hostile work environment.

The week of December 22nd, while in the courtroom, I was yelled at for the arrangement of the files on the table. The files have been arranged that day for two days, you called a "liar" and said that I had moved them you continued to shove the files off the table and demanded that I pick them up. It was detrimental. After picking the files up, and trying to rearrange them, you came

back in asked why I rearrange the files, I sighed and you threw a file towards me telling me to "lose the attitude", you then yelled at me again "DO NOT TOUCH THE FILES" and told me to sit at my desk. I walked out then in tears and completely confused as to the situation.

They have been a few more incidents like the one above; there was an instant where you waved your finger in my face so close that it brushed the tip of my nose, or asking it I needed to see a doctor a remark that you made, cause me to get upset and I began to cry. The verbal abuse and ridicule in front of staff has continued, with constant insults and mention of my disability. I have always been a very strong individual that tend not to show emotions.; but since my first day, I have find myself, very emotional and defeated.

The situation that took place the afternoon of January 18, 2017, is what is the immediate cause for this letter. I stress again that I understand that there are different supervision tactics, amongst employees. But I don't believe that any employee should be subject to being hit by their immediate supervisor. Physical abuse is something I didn't think I would ever have to experience in the workplace. You walked over near my desk, the phone was ringing and was now on about the third ring, I went to reach for the phone, and you slapped my hand so hard that it slammed on the desk, with a loud bang, I felt immediate shock, embarrassment and humiliation, I felt as if I was a child had been punished; I have never experienced anything like this. You proceeded to tell me that "you don't answer the phone when I am coming to talk to you". All I could do was hang my head and respond "Yes ma'am". What do you do when you have been struck by someone in a position of authority, how do you respond, how do you feel? Can anything constructive be taken from that? I feel as if you are extremely frustrated with me, and I just want and explanation as to why.

I am aware there has been turnover in your office; those who have made the decision to leave, whether it be pressure, workload, supervision or whatever reason. I have never quit a job, only leaving for a greater opportunity, I enjoy the work that I do for you, and consider this move to your office to be a "greater opportunity", and wish to continue working for you but I would care not to work under these extreme conditions. I was hoping that you'd be willing to meet to discuss my concerns.

Respectfully submitted,


N'ell Jones
Trial Court Administrator/Veterans Drug Treatment Administrator
Ninth Division Circuit Court



EXHIBIT

tabbies

4



# *Judicial Discipline & Disability Commission*

**JUDGE KIRK JOHNSON**
**CHAIRMAN**

*323 Center Street • Suite 1060*
*Little Rock, AR 72201*
*(501) 682-1050 • Fax: (501) 682-1049*
*E-Mail: jddc@arkansas.gov*

**DAVID J. SACHAR**
**EXECUTIVE DIRECTOR**

July 13, 2018


Honorable Mary Spencer McGowan
Sixth Judicial District, Ninth Division
401 West Markham, Room 240
Little Rock, AR 72201

RE:   JDDC Case No. 17-143, 17-148, 17-161, 17-197 *(#17-143 et al.)*

## <u>LETTER OF CENSURE</u>

Dear Judge McGowan:

You were alleged to have committed violations of the Code of Judicial Conduct in the above referenced case.  The following facts comprise the violations which you agree are no longer alleged but are proven:

## <u>UNDISPUTED FACTS:</u>

1) Judge Mary Spencer McGowan *(hereinafter referred to as "McGowan")* is the Sixth Judicial District Circuit Court Judge for the Ninth Division in Arkansas and has served in this capacity since January 1, 1991.

2) JDDC #17-143 was a complaint filed by former court staff employee N'Ell Jones, *(hereinafter referred to as "Jones")*.

3) JDDC #17-148 was a complaint filed by Deputy Public Defender Mac Carder, *(hereinafter referred to as "Carder")*, who throughout the course of calendar

years 2016 and 2017 had random criminal cases assigned to McGowan's court. As reflected in audio recordings, during the hearing in Pulaski County Case No. 60CR-15-3634 on November 7, 2016, McGowan ended the hearing and told her court reporter "that's all for the record." Also, McGowan instructed Carder's client to step away from him and proceed to probation officers while Carder was attempting to argue on her behalf. McGowan excused Carder from her court as he was attempting to make this same legal argument. McGowan's conduct in this hearing was impatient, discourteous and undignified for a judge.

4) JDDC #17-161 was a complaint filed by JDDC Executive Director, David J. Sachar (*hereinafter referred to as "Sachar"*), based on a hearing conducted in McGowan's court on February 28, 2017 in Pulaski County Case No. CR2013-2275 and a subsequent hearing conducted in Pulaski County Case No. CR2011-73 on that same date. Both of these cases were Drug Court cases. Both hearings involved Deputy Prosecuting Attorney Vicky Ewenike (*hereinafter referred to as "Ewenike"*). As reflected in the audio recording on February 28, 2017, McGowan was heard interrupting and eventually "excusing" or removing Ewenike from her courtroom in the middle of a hearing, where Ewenike was the Attorney for the State of Arkansas. McGowan proceeded with the hearing without a deputy prosecutor. Also on February 28, 2017, McGowan conducted a hearing in Pulaski County Case No. CR2011-73 after removing Ewenike from her courtroom and without a deputy prosecuting attorney available. McGowan's demeanor as reflected in the audio recordings was impatient and discourteous toward Ewenike, and undignified for a judge.

5) JDDC #17-197 was a complaint filed by litigant, John M. Miles (*hereinafter referred to as "Miles"*) based on Pulaski County Case No. 60CR-16-2800, a Drug Court case. A hearing was conducted before her on January 17, 2017. During this hearing, McGowan raised her voice and used a discourteous tone while talking to Miles as his case was being heard. McGowan's demeanor as reflected in the audio recordings, was impatient, discourteous and undignified for a judge.

6) McGowan has been impatient, discourteous and undignified to probation officers assigned to her court.

7) McGowan has behaved impatiently, discourteously and in an undignified manner with members of her court staff.

8) McGowan was reprimanded by the JDDC in Case No. 05-150 on November 21, 2008 for conduct involving injudicious temperament claims with litigants and lawyers practicing in her court. In the above referenced reprimand, the JDDC found that McGowan was not always patient or courteous to litigants and lawyers and others with whom she dealt in her official capacity.

9) McGowan was informally adjusted by the JDDC in Case No. 15-258 on November 18, 2016 for conduct involving a delayed ruling in Pulaski County Circuit Court Case No. 60CV2012-2715. In this Informal Adjustment, the JDDC considered McGowan's previous reprimand for seven (7) other instances of delay that were resolved by the sanction in paragraph 8, above.

10) McGowan's actions in paragraphs one (1) through six (6) violated Canons 1.1, 1.2, 2.2, 2.5, 2.6 and 2.8.

McGowan is formally censured for this conduct.

## RELEVANT AUTHORITY:

The Judicial Discipline and Disability Commission (*hereinafter referred to as the "JDDC"*) determined, and you agree, that the above described behavior violates the following sections of the Code of Judicial Conduct (*hereinafter referred to as the "Code"*):

## *CANON 1*

***A JUDGE SHALL UPHOLD AND PROMOTE THE INDEPENDENCE, INTEGRITY, AND IMPARTIALITY OF THE JUDICIARY, AND SHALL AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY.***

## *RULE 1.1 Compliance with the Law*

*A judge shall comply with the law, including the Arkansas Code of Judicial Conduct.*

### RULE 1.2 Promoting Confidence in the Judiciary

*A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.*

### CANON 2

### A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE IMPARTIALLY, COMPETENTLY, AND DILIGENTLY.

### RULE 2.2: Impartiality and Fairness

*A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially.*

### RULE 2.5: Competence, Diligence, and Cooperation

*(A)  A judge shall perform judicial and administrative duties, competently and diligently.*
*(B) A judge shall cooperate with other judges and court officials in the administration of court business.*

### RULE 2.6: Ensuring the Right to be Heard

*(A)A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to the law.*

*(B)A judge may encourage parties to a proceeding and their lawyers to settle matters in dispute but shall not act in a manner that coerces any party into settlement.*

### RULE 2.8:  Decorum, Demeanor, and Communication with Jurors

*(A)A judge shall require order and decorum in proceedings before the court.*

(B) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, court staff, court officials and others subject to the judge's direction and control.

## DISCUSSION:

Judicial temperament that exhibits patience, courtesy and dignity is a hallmark characteristic of a good judge. The assumption of judicial office casts upon judges duties in respect to personal conduct. The robe magnifies words and actions and the judicial office imposes speech and conduct restrictions that would be burdensome to the ordinary citizen. The courts and local legal bar are bound together. An attack upon the courts is an attack upon the profession. Equally, when a judge behaves in a way that is disrespectful to lawyers, it can create public disrespect for the legal profession in general. (*See* former President of the United States and Supreme Court Chief Justice, W.H. Taft, *Ethics in Service*, 1915).

The judiciary cannot exist without the trust and confidence of the people. Judicial demeanor issues can lead to more than just an unpleasant courtroom experience. The chronic behavior of a judge may be such that Due Process is curtailed. As we have noted before, "[t]he Due Process Clause of the Fourteenth Amendment of the United States Constitution is not a technicality. It is, in fact, one of the cornerstone principles that sets our justice system apart from much of the rest of the world." *Martinez v. State*, 2014 Ark. App. 182 (Judge R. Gladwin, *concurring*).

The average citizen cannot be expected to brush off impatient or undignified temperament by a judge. The power imbalance is such that a litigant has no way to respond without risking a harsh or even vindictive counter response from a judge. Undignified judicial temperament may render litigants reluctant to fully present their case. Thus, fear of being unfairly chastised or mocked may affect the fundamental right to a fair hearing.

## CONCLUSION:

You agree that a *Censure* is the appropriate sanction for your conduct in JDDC Case # 17-143 et al.

A **Censure** is *a formal sanction for violating the Code of Judicial Conduct. It is a declaration that a judge is guilty of misconduct that does not require suspension or removal. A stern rebuke that finds the conduct of the judge violates a rule of judicial conduct, detrimentally affects the integrity of the judiciary, and undermines public confidence in the administration of justice. A censure also serves as a public warning to other judges.* Your willingness to accept that your actions were in violation of the Code and your commitment to be cognizant of the issues listed above, have led the JDDC to refrain from recommending a more serious sanction or proceeding to a hearing on the merits.

Ethics agencies must not merely theorize on proper or improper conduct, but must effect change and correct conduct if able. (*See* Aristotle, *Ethics*, 349 B.C.). Particular to these complaints, a simple written declaration of improper behavior will not suffice. Therefore, pursuant to this negotiated resolution the following conditions are imposed. If you violate the terms below or have additional violations of the Code, the JDDC will initiate a new investigation under the Rules of Procedure of the Judicial Discipline & Disability Commission. In any future proceeding, the JDDC may take into consideration the fact that you were sanctioned in Case #17-143 et al., in which allegations have been substantiated and agreed as Code violations.

The **Censure** for Case #17-143 et al., includes the following agreed conditions:

- You shall refrain from engaging in conduct similar to that described in the above referenced complaints.

- You shall be patient, courteous and dignified at all times during your term in office.

- You shall attend a course[s] at The National Judicial College or National Center for State Courts or any other similar educational institution, involving proper judicial demeanor (or related topics), within twelve (12) months from the date of this letter and provide proof to the Commission of its completion, provided that at least one of these educational institutions offers a judicial demeanor course within the referenced 12 month period.

- You shall coordinate and communicate with the administrative judge in your district regularly regarding management of your court.

- You shall allow JDDC staff or their assigned agent entry into your courtroom at any time as requested by the JDDC. The JDDC will send monitors (staff or special investigators) who will have identification with them. Failure to allow the JDDC monitor access to the courtroom or proceeding shall be considered a violation of the Code of Judicial Conduct and grounds for a new complaint. The JDDC monitors are bound by confidentiality in any closed proceeding just as they are in any judicial investigation involving information from juvenile court, certain drug courts, adoptions and other confidential litigation. As to cases that are not covered by specific confidentiality provisions, your court shall remain open to the public as is required by law.

- You shall provide the JDDC with audio recordings of any proceeding as requested. Transcripts may also be requested to accompany recordings. These recordings shall be provided promptly but no later than five (5) business days after inquiry.

The JDDC will monitor your compliance with this agreement over the remaining portion of your judicial career. The JDDC may file new allegations against you if your behavior is not in compliance with the Code of Judicial Conduct, violates the conditions of this negotiated resolution or if you fail to respond to the Commission's periodic requests for status reports.

In view of these circumstances, it is the judgment of the JDDC that you are hereby censured, for your behavior in Case #17-143 et al. This public sanction constitutes adequate discipline and no further action, other than the remedial measures and conditions described above, is warranted.

This Commission action is public information.

Sincerely,

David J. Sachar
Executive Director